FILED

2009 Jul-09  PM 04:22
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RUBIR FIGUEROA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case Number:** |
| **v.** | ) | **2:09-cv-00295-UNAS-JEO** |
| | ) | |
| **DRAKOS[1] HOLDING CORP. d/b/a** | ) | |
| **THE FISH MARKET RESTAURANT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION & ORDER

This is a case brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., in which the plaintiff, Rubir Figueroa, seeks payment from his employer, defendant Drakos Holding Corporation d/b/a The Fish Market Restaurant, for unpaid overtime wages and liquidated damages, as well as attorney's fee and costs pursuant to 29 U.S.C. §§ 207(a)(1) and 216(b). (*See* Complaint ("Compl."), Doc. 1). It is now before the court on the parties' "Joint Motion to Approve Settlement and to Dismiss Action with Prejudice." ("Joint Mot.," Doc. 5). The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). *Id*. For the reasons that follow, the court concludes that it cannot approve the parties' settlement or dismiss the action based on the limited materials and information now before the court. Accordingly, the court defers its ruling on those matters. To the extent that the parties' joint motion requests that they be permitted to submit their written agreement without having it put in

---

[1]In the "header" of the complaint, the defendant is identified as "Darkos Holding Corp. d/b/a The Fish Market Restaurant." (Doc. 1 at 1). However, in the body of that same pleading, the defendant is identified as "Drakos Holding Corp. d/b/a The Fish Market Restaurant." (*Id.* ¶ 5). The defendant's answer indicates that the latter designation, "Drakos," is correct.

the record or filed under seal, the motion is due to be denied.  Instead, this cause will be set for a

hearing at which time the parties shall be required to offer their agreement and other materials or

information sufficient to allow the court to make a meaningful assessment of whether the

settlement represents a fair and reasonable resolution of a bona fide dispute over FLSA

provisions.

I.      BACKGROUND

        In the complaint, the plaintiff alleges that he was employed by the defendant beginning in

or about November 2004 through February 2009 but was not paid overtime wages for time

worked in excess of 40 hours per week, as required under the FLSA, *see* 29 U.S.C. § 207.

(Compl. at ¶¶ 7, 9, 10).  The complaint does not specify, however, the plaintiff's hourly wage,

how many overtime hours he claims to have worked, or any sum certain he says is due.

Likewise, in the instant joint motion, the parties do not specify any of the circumstances

underlying the plaintiff's claim or the amount of the settlement or any allocation thereof towards

unpaid overtime, liquidated damages, and attorney's fees.   Rather, the parties simply stipulate

that, following negotiations conducted by their respective retained legal counsel, they have

reached what they both consider to be "a fair compromise of the disputed claim under the law

and the facts of the case."  (Joint Mot. at ¶ 2).  The parties further state that the settlement

agreement also provides that both parties are to keep the terms of the agreement confidential and

that confidentiality is a material term of the agreement.  *Id*. at ¶ 4.  As such, they request that the

settlement be approved based on the joint representations of counsel that they not be required to

submit the actual settlement agreement to the court, or, in the alternative, to be allowed to submit

it privately to the court for an in camera inspection or that it be filed and maintained under seal

and not made public.  (*Id.* ¶ 4).

## II.   ANALYSIS

### A.   Court Review of FLSA Settlement Agreements

The FLSA provides that employees are generally entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of 40 per week.  *See* 29 U.S.C. § 207(a)(1).  An employer who violates the FLSA is liable to its employee for both unpaid overtime compensation and for an equal amount in liquidated damages.  29 U.S.C. § 216(b).  In an action to recover unpaid overtime compensation, a court is further required to award a prevailing plaintiff a reasonable attorney's fee and costs of the action.  *Id.*

In *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), the court recognized that the provisions of the FLSA "are not subject to negotiation or bargaining between employers and employees."  *Id.* at 1352 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 902 (1945)).  This is so because to allow FLSA rights to be "abridged by contract or otherwise waived ... would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."  *Id.* (quoting *Barrentine v. Arkansas-Best Freight Syst.*, 450 U.S. 728, 101 S.Ct. 1437, 1444 (1981)); *see also Wethington v. City of Montgomery*, 935 F.2d 222, 229 (11th Cir. 1991).  Thus, employees may not generally agree privately with their employers to waive or compromise their FLSA rights pertaining to either overtime wages owed or liquidated damages.  *See Lynn's Food Stores*, 679 F.2d at 1352; *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-16 (1946); *see also Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) ("The language of the statute contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" (quoting *Maddrix v. Dize*, 153

F.2d 274, 275-76 (4th Cir. 1946)).

Where, as here, there has not been a payment supervised by the Department of Labor, *see* 29 U.S.C. § 216(c); *Niland v. Delta Recycling Corp.*, 377 F.3d 1244, 1247 (11th Cir. 2004), the court in *Lynn's Food Stores* held that "there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  679 F.2d at 1355.  That court explained:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*, 679 F.2d at 1354.

The primary focus of a court's inquiry in determining whether to approve an FLSA settlement is to ensure that an employer does not take advantage of its employees in settling their claim for wages and other damages due under the statute.  *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 714, 719 (E.D. La. 2008).

> In essence, the [c]ourt must ensure that the parties are not, via settlement of the plaintiff['s] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.  If no question exists that the plaintiff[ is] entitled under the statute to the compensation [he] seek[s] (and therefore to liquidated damages, as well), then

any [compromised] settlement of such claims would allow the employer to negotiate around the statute's mandatory requirements.  Without a bona fide dispute, no [compromised] settlement could be fair and reasonable.  Thus some doubt must exist that the plaintiff[ ] would succeed on the merits through litigation of [his] claims.

*Id.* at 719-20.  Further, the "mere existence of an adversarial lawsuit" is not itself enough to satisfy the requirement that a "bona fide dispute" exists.  *Id.* at 720.  The presence of an attorney representing an FLSA plaintiff and the filing of a lawsuit makes the likelihood of a pressured settlement much lower than it would be otherwise.  *See id.*; *Lynn's Food Stores*, 679 F.2d at 1354.  However, for the fairness inquiry to have any meaning, a court must do more than just take at face value the parties' assertion that the lawsuit involves a bona fide dispute over FLSA coverage or the extent of liability.  *See Collins*, 568 F. Supp. 2d at 720.  But "once a bond fide dispute is found to exist, a continuum will be created in which the less persuasive the employee['s] arguments [or supporting evidence] for coverage [or the extent of liability] under the FLSA, the lower the proportion of the potentially uncompensated wages (plus liquidated damages) that would be necessary to make a settlement 'fair and reasonable.'"  *Id.* at 720 n.6.

As the record now stands, the court cannot approve the parties' settlement.  In short, the parties have not presented the court with sufficient information to evaluate whether there actually is a bona fide dispute over FLSA overtime coverage or the extent of liability or whether the proposed settlement is fair and reasonable.  Indeed, the *sum total* of what the court knows at this point is that the parties are represented in this action by counsel who negotiated a settlement of a claim for overtime wages allegedly due the plaintiff for work performed sometime during his admitted employment by the defendant from about November 2004 until February 2009.  The court has not been advised, however, of *any* information regarding *any* of the following matters:

5

(1) the plaintiff's title or position with the defendant or whether there are any circumstances that might support or rebut that the plaintiff was exempt from, or otherwise not subject to, FLSA overtime requirements; (2) the number of overtime hours that the plaintiff claims to have worked; (3) the time period(s) for which the plaintiff claims he was not paid overtime; (4) the plaintiff's alleged regular rate of pay during the period(s) for which he seeks overtime; (5) circumstances that might tend to support or rebut a claim that the defendant's alleged violation was "willful," so as to extend the statute of limitations from two to three years, *see* 29 U.S.C. § 255(a); (6) the amount of overtime wages that the plaintiff is claiming in this action; (7) the nature of any potentially disputed legal or factual issues; (8) the amount of the settlement; or (9) how the settlement is being allocated as between wages, the liquidated damages, and an attorney's fee.  The presentation of materials regarding the fairness of an FLSA settlement should not be turned into a trial or a rehearsal of the trial.  *Collins*, 568 F. Supp. 2d at 720.  Yet, in order to fulfill its duty to scrutinize the settlement to evaluate whether it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions," *Lynn's Food Stores*, 679 F.2d at 1355, the court cannot simply "take the parties' word for it," which is what the court is now being asked to do.

The court concludes that, at a minimum, the parties must submit the proposed settlement agreement for review.  *See Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003) (holding that when an FLSA settlement is approved by the court, the settlement becomes part of the judicial record); *Bartelloni v. DeCastro* [No. 05-80910-CIV], 2007 WL 2155646, *1 (S.D. Fla. July 26, 2007) (recognizing that an FLSA settlement could not be approved without the agreement itself being reviewed by the court).  However, the court does not believe such

submission, standing alone, will be sufficient to allow the court to conduct the fairness evaluation required under *Lynn's Food Stores*. The parties' description of the written agreement indicates that it is in what is essentially standard form, stating the amount of the settlement and how it is to be allocated between overtime, liquidated damages, and attorney's fees, and containing a disclaimer by the defendant of any admission of liability or wrongdoing, with a release of all liability by the plaintiff. (Joint Mot. at ¶ 3). The amount of the settlement and its specific allocation have not been disclosed but presumably would be upon the court's review of the document. The agreement, like the parties' joint motion, also presumably states in generic terms that it constitutes a settlement of disputed FLSA issues. However, in order to conduct a meaningful evaluation, the court must have enough information to glean at least a basic understanding of not only the terms of the proposed settlement but also the circumstances underlying the plaintiff's claim and the principal disputed factual and legal issues associated therewith. That is, to say that under the settlement the plaintiff would receive, for example, $5,000, does not, standing alone, allow one to assess whether there is a genuine dispute over legal or factual issues or that such a settlement is "fair" or "reasonable." Rather, that task can only be undertaken by evaluating the settlement terms *in relation to* the substance of the plaintiff's claims and the defendants potential defenses in light of their likely evidentiary support and the prevailing law. At this point, the court has no idea, frankly, of any of those matters. Accordingly, the parties will be ordered to present, along with the agreement, sufficient materials or information to allow the court to evaluate the settlement vis-á-vis the circumstances underlying the plaintiff's overtime claim, including the factual and legal issues that may have been in bona fide dispute.

7

**B.      Form of Proceedings and the Right of Public Access**

The next issues that the court must decide are: (1) the form of the proceedings by which

the requisite information described above must be presented to the court and (2) whether to allow

such proceedings to occur under seal or otherwise outside of public view, as the parties have

jointly requested.  The first issue is relatively straightforward and discretionary with the court.  In

essence, the court can have the parties appear at a hearing, file answers to interrogatories

propounded by the court, and/or file other relevant documents, such as discovery responses or

affidavits.  Courts have employed variations and combinations of these methods in this context.[2]

While the court does not believe that there is truly any "wrong" choice, the court will set the

matter for a fairness hearing, for such seems the most expeditious course.

The more complex issue, and perhaps more important to at least one of the parties, is the

second matter, i.e., whether the public is due to be precluded from access to the settlement

agreement and other proceedings by which the parties would present the court with information

necessary to assess the fairness of the settlement.  The parties' joint motion indicates that the

agreement contains a recitation that confidentiality is a material element thereof, and the parties

have expressed their mutual desire for the court to keep the document itself out of the record or,

in the alternative, if required to be placed in the record, to have it sealed.   The court would

presume that such desire for privacy likewise extends to other documents, testimony,

---

[2]*See, e.g., Stalnaker,* 293 F. Supp. 2d at 1263 (approving settlement after "speaking with" the FLSA plaintiff); *Snell v. City of Slocomb* [No. 1:07cv898-MHT], 2008 WL 2945599, *1 (M.D. Ala. July 29, 2008) (approving settlement after a hearing); *Shannon v. Saab Training USA, LLC* [No. 6:08-cv-803-Orl-19DAB], 2009 WL 1773808, *2 (M.D. Fla. June 23, 2009) (considering submissions by the parties and holding an evidentiary hearing); *Longcrier v. HL-A Co.*, [No. 08-0011-WS-C], 2009 WL 1118906, *1 (S.D. Ala. April 27, 2009) (noting that the parties had "furnished the Court with documentation and information to facilitate the review/approval process"); *Younger v. Accent American Staff Services, Inc.* [No. 6:08-cv-1671-Orl-31DAB], 2009 WL 1810717, *2 (M.D. Fla. June 24, 2009) (approving settlement based upon review of the complaint, "Answer to Court Interrogatories, and [a] brief in support of the Proposed Consent Judgment").

8

information, or proceedings that would illuminate the terms of the settlement or the

circumstances underlying the plaintiff's overtime claim.  In theory, the court could accede to the

parties' wishes by sealing the settlement agreement and any related filings made in support of its

approval and excluding the public from the fairness hearing and sealing the transcript.  However,

as explained below, such a course is not warranted in the context of securing necessary judicial

approval of an FLSA settlement, despite the parties' confidentiality agreement.

It is well established that there is a common-law right of public access to judicial

proceedings.  *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).  Based upon this

right, the Eleventh Circuit has recognized a "general presumption that criminal and civil actions

should be conducted publicly," *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d

1304, 1311 (11th Cir. 2001), for a trial courtroom is typically characterized as "'a public place

where the people generally–and representatives of the media–have a right to be present.'"

*Newman v. Graddick*, 696 F.2d 796, 800-01 (11th Cir. 1983) (quoting *Richmond Newspapers,*

*Inc. v. Virginia*, 448 U.S. 555, 578 (1980) (Burger, J.) (plurality opinion)); *see also Sweeney v.*

*Athens Reg. Med. Ctr.*, 917 F.2d 1560, 1565 n.5 (11th Cir. 1990) ("'What transpires in the

courtroom is public property.'" (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)).

Accordingly, courts have held that the public is generally authorized to attend not only civil trials

but also pre-trial and post-trial courtroom hearings.  *See Wilson v. American Motors Corp.*, 759

F.2d 1568, 1570 (11th Cir. 1985) ("[A]bsent some exceptional circumstances, trials are public

proceedings."); *Newman,* 696 F.2d at 801 (holding that civil trials, and at least some pre- and

post-trial hearings, pertaining to the release or incarceration of prisoner and their conditions of

confinement are presumptively open to the public); *see also Matter of Continental Illinois*

9

*Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983); *Publicker Indust. v. Cohen*, 733 F.2d 1059, 1066-67 (3d Cir. 1984); *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988); *Westmoreland v. CBS*, 752 F.2d 16, 23 (2d Cir. 1984); *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir. 1983).

The common-law right of access also includes the right to inspect and copy public records and documents. *Romero*, 480 F.3d at 1245. When applying this right of access, courts "traditionally distinguish between those items which may be properly considered public or judicial records and those that may not; the media [and the public] presumptively have access to the former, but not to the latter." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). In practical terms, the Eleventh Circuit has drawn the line such that material filed in connection with any substantive pretrial motion unrelated to discovery is subject to the common law right of access. *See id.* at 1312; *Romero*, 480 F.3d at 1245-46. Accordingly, a "motion that is 'presented to the court to invoke its powers or affect its decisions' whether or not characterized as dispositive," is presumed to be subject to public access. *Romero*, 480 F.3d at 1246 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

"In most cases, when the parties settle, the court does not examine or approve their agreements; the settlements are purely private contracts." *Stalnaker,* 293 F. Supp. 2d at 1263. Thus, settlement agreements do not typically become either part of the court record or subject to the common-law right of public access. *See Jessup v. Luther*, 277 F.3d 926, 928-29 (7th Cir. 2002). However, as recognized in *Lynn's Food Stores*, the settlement of an FLSA claim is not a purely private matter; because employers and employees may not contract around minimum

10

wage or overtime requirements, they are not permitted simply to settle disputed FLSA claims by agreement amongst themselves.  *See* 679 F.2d at 1352.  Rather, a privately negotiated FLSA settlement will not have preclusive effect unless it is submitted to, and approved in a stipulated judgment by, the court, which has a duty to vindicate "the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'"  *Stalnaker*, 293 F. Supp. 2d at 1264 (quoting *O'Neil*, 324 U.S. at 706-07).  As such, courts addressing the issue appear to be unanimous in holding that where litigants move the court to approve their FLSA settlement under *Lynn's Food Stores*, the settlement is deemed part of the judicial record and presumed subject to the public right of access.  *See, e.g., Stalnaker*, 293 F. Supp. 2d at 1263-64; *Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 609-10 (E.D. Va. 1999); *Hanson v. Wells Fargo Bank, N.A.* [No. 08-80182-Civ.], 2009 WL 1490582, *1 (S.D. Fla. May 26, 2009); *Prater v. Commerce Equities Mgmt. Co.* [No. H-07-2349], 2008 WL 5140045, *9 (S.D. Tex. Dec. 8, 2008); *Velez v. Family Dollar Stores of Fla., Inc.* [No. 6:08-cv-1120-Orl-31KRS], 2008 WL 4097691, *1 (M.D. Fla. Sept. 3, 2008); *Bartelloni*, 2007 WL 2155646, *1; *cf. Romero*, 480 F.3d at 1246 (noting in dicta that the "common law right [of public access] applies to [a] motion to approve [a] settlement agreement" (citing *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993)); *Jessup*, 277 F.3d at 929 ("The public has an interest in knowing what terms of settlement a federal judge would approve and perhaps therefore nude the parties to agree to."); *Bank of Amer. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhous Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) ("[T]he common law presumption of access applies to motions filed in court proceedings and the settlement agreement ... filed and submitted to the district court for approval.").  And because a request to approve an FLSA

settlement seeks to invoke a substantive judicial action to which the right of access applies, access would also be presumed as to any other documents or materials filed with the court in support of such approval.  *See Romero*, 480 F.3d at 1245-46; *Chicago Tribune*, 263 F.3d at 1312; *see also Federal Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408-09 (1st Cir. 1987) (right of access applied to document on which a court relied in approving a consent degree because that approval settled a civil enforcement action).

Even to the extent that it is applicable, however, the common-law presumption of open access to judicial proceedings and records is not absolute.  The Eleventh Circuit has explained:

> The common law right of access may be overcome by a showing of good cause, which requires balancing the asserted right of access against the other party's interest in keeping the information confidential.  Whether good cause exists is decided by the nature and character of the information in question.  In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Romero*, 480 F.3d at 1246 (citations, internal quotation marks, brackets, and ellipses omitted).

The only justification offered by the parties at this juncture for keeping the settlement agreement out of the record or under seal is their apparent mutual desire to keep the terms of their settlement confidential.  However, such does not constitute cause to overcome the presumption of public access in this context, and the court, therefore, denies the parties' request to submit a copy of the settlement agreement to the court outside the record or to have the

agreement placed in the record under seal.[3]  *See Stalnaker*, 293 F. Supp. 2d at 1264; *Boone*, 79 F.

Supp. 2d at 609-10; *Hanson*, 2009 WL 1490582, *1; *Prater*, 2008 WL 5140045, *9-10; *cf.*

*Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) (reversing district court's

order to seal pleadings, orders, and summary judgment evidence based upon the parties' request

that the court do so as an integral part of a negotiated settlement between them, facilitated by the

court); *Wilson*, 759 F.2d at 1571 (holding that district court erred by granting the defendant's

unopposed motion to seal the entire file, including the trial transcript, to facilitate the parties

settlement agreement reached during trial but prior to judgment).

## III.    CONCLUSION

Based on the foregoing, the court **DEFERS** ruling upon the parties' joint motion (doc. 5)

insofar as it requests the court to approve their FLSA settlement agreement and to dismiss the

action.  The parties' joint motion is **DENIED** to the extent that it requests that the parties be

permitted to submit the agreement outside of the record for an in camera review or to file the

agreement under seal.  The court hereby **ORDERS** that the parties' joint motion is **SET** for a

hearing at **9:00 a.m., Tuesday, July 21, 2009, Courtroom 3, Hugo Black U.S. Courthouse,**

**Birmingham, Alabama**.  At said hearing, at which time the parties shall present the court with

---

[3]It does not matter that no third party has objected here to the parties' request to keep the settlement out of the record or under seal.

> [T]he presumption of openness does not depend on the media's being interested in a particular case. *In re Estate of Martin Luther King, Jr. v. CBS*, 184 F. Supp. 2d 1353, 1363 (N.D. Ga. 2002).  Rather, the presumption is based on the nature of democracy and the "citizen's desire to keep a watchful eye on the workings of public agencies." *Nixon* [*v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)].  A judge is "the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal" any part of the record.  For this reason, a judge "may not rubber stamp a stipulation to seal the record." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).

*Stalnaker*, 293 F. Supp. 2d at 1263-64.

their written agreement and other material or information necessary to evaluate whether their settlement represents a fair and reasonable resolution of a bona fide dispute over FLSA coverage or the extent of liability.

      **DONE** this 9th day of July, 2009.

                            _John E. Ott_

                            **JOHN E. OTT**
                            United States Magistrate Judge